**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**


THE BOLER COMPANY, a Delaware          )
Corporation, and HENDRICKSON USA,      )
LLC, a Delaware Limited Liability      )
Company,                               )
                    Plaintiffs.        )
                                       )
                    v.                 )        05 C 1644
                                       )
RAYDAN MANUFACTURING, INC., a          )
Foreign Corporation, and              )
ARVINMERITOR, INC., a Nevada          )
Corporation                            )
                                       )
                    Defendants.        )


**MEMORANDUM OPINION**

     This case is before the court for ruling on the motions to
dismiss filed by defendants Raydan Manufacturing, Inc. ("Raydan")
and ArvinMeritor, Inc. ("ArvinMeritor").  According to defendants,
the court lacks subject matter jurisdiction over this declaratory
judgment action.  For the reasons explained below, the court agrees
and therefore grants Raydan's and ArvinMeritor's respective motions
to dismiss.

**BACKGROUND**

     Plaintiffs The Boler Company ("Boler") and its indirect
subsidiary Hendrickson USA, L.L.C. ("Hendrickson USA") compete with
defendants in the market for truck and trailer suspension systems.
According to the First Amended Complaint for Declaratory Judgment

("First Amended Complaint"),[1] Boler and/or Hendrickson USA make, use and sell suspension products for trucks and trailers under the trademark AR2. Raydan, which makes, produces and distributes suspension and coupling systems for trucks and trailers under the trademark Air Link, is the lawful owner of the right, title and interest in and to U.S. Patent No. 5,228,718 ("the '718 patent"). ArvinMeritor, a maker and distributor of axle suspension systems and other components for trucks and trailers, also makes, uses, and sells Air Link products pursuant to a license agreement with Raydan.

On March 21, 2005, Boler filed a complaint under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaration that it has not infringed the '718 patent. Both defendants have moved to dismiss on grounds that there is no actual controversy between Boler and either defendant, and thus, the court lacks subject matter jurisdiction. In moving to dismiss, defendants challenge the factual accuracy of plaintiffs' allegation that "Raydan has asserted and continues to assert that Boler and/or Hendrickson USA infringe the '718 patent." (Am. Compl. ¶ 15.) As explained in an affidavit submitted by Raydan's President and Chief Executive Officer, Raymond W. English, prior to the filing of this lawsuit neither Raydan's management nor any person acting with

---

[1] For reasons explained later in this opinion, after the motions to dismiss were fully briefed, Boler filed the First Amended Complaint. Although Boler did so without obtaining leave of court as Rule 15(a) of the Federal Rules of Civil Procedure requires, both defendants subsequently filed notices to assert and incorporate their Rule 12 motions to dismiss against Hendrickson USA in addition to Boler. Accordingly, the court will rule on the motions to dismiss as they relate to both Boler and Hendrickson USA.

authority of Raydan's management had communicated with any representative of Boler regarding the '718 patent, let alone made any assertions to Boler that Boler was infringing the '718 patent. (English 5.17.05 Decl., ArvinMeritor's Mot. to Dismiss at Ex. 1.)

During the course of subsequent briefing, it became clear that Boler's decision to file its declaratory judgment lawsuit stemmed from an incident that occurred during a trade show in Las Vegas, Nevada on March 16, 2005, five days before Boler commenced this litigation. The details of that incident are disputed. According to Boler, on the morning of March 16, 2005, William Curtis Wagner, an OEM Account Manager for Hendrickson USA, and Larry Sommers, a district sales manager for Hendrickson USA, were straightening up the Boler booth when a marketing manager for Raydan named Rick Nissen came to the booth. Wagner claims that during a conversation he had with Nissen, Nissen pointed to an AR2 suspension product and stated "I see you are actually showing the model in the booth now. It's good to see our product displayed in your booth as well as ours and [Arvin]Meritor's." (Wagner Aff. ¶ 6, Boler's Opp. Br. at Ex. 1.) Nissen then directed a photographer to take pictures of the AR2 and, while pointing at the front hanger to trailing arm pivot on the AR2, stated to Wagner, "That's where you are violating our patent." (Id. ¶ 7.) When English approached the Boler booth, Nissen said to Wagner, "I'd like you to meet your future boss, Ray

English.  We are going to own your company."[2]  (Id. ¶ 8.)  Wagner
further attests that Nissen's statements, coupled with English's
presence, left him with the conviction that Raydan believed that
the AR2 infringed Raydan's patent and that Raydan would sue Boler
for patent infringement.  (Id. ¶ 11.)  After English and Nissen
left the booth, Wagner called Boler to report the perceived threat.
(Id. ¶ 9.)

Defendants acknowledge that both Nissen and English went to
the Boler booth the morning of March 16, 2005, but dispute Boler's
account of what happened while they were there.  Nissen explains
that during his brief conversation with the individuals at the
booth, although he pointed out that there are some similarities
between the AR2 suspension system and the Air Link suspension
system, at no point did he identify a particular component of the
AR2 suspension system and state: "That's where you are violating
our patent."  (Nissen Decl. ¶ 9-10, Raydan's Reply Br. at Ex. A.)
According to Nissen, at no time did he mention any Raydan patent or
state that Raydan would sue for patent infringement.  Nissen
further attests that as a marketing manager, he has no
responsibility for analyzing and evaluating products for patent
infringement.  (Id. ¶ 4.)  Indeed, he is not familiar with what
would or would not constitute an infringement of Raydan's patents.
(Id. ¶ 16.)  As for his introduction of English, Nissen states that

---

[2]  Sommers, who was at the booth during the incident but not directly
involved, asserts that he saw Nissen talking to Wagner, and heard Nissen say
words to the effect that "We are going to own your company." (Sommers Aff. ¶ 7.)

he introduced English to the individuals at the Boler booth as "the President of our company and our boss," but never said "I'd like you to meet your future boss Ray English.  We are going to own your company[.]" (Id.  ¶¶ 11-12.)

Likewise, English attests that during his visit to the Boler booth at the trade show, he did not hear Nissen make any statements that Boler or Hendrickson USA were infringing Raydan's patent, nor did he hear Nissen state "I'd like you to meet your future boss Ray English.  We are going to own your company[.]" (English 6.29.05 Decl. ¶¶ 9-10, Raydan's Reply Br. at Ex. B.)  Rather, Nissen introduced English as his boss and president of the company.  (Id. ¶ 8.)  English further declares that as a marketing manager, Nissen is not a member of senior management, bears no responsibility for analyzing or evaluating products for patent infringement, and lacks authority to speak on Raydan's behalf regarding legal or management decisions.  (Id. ¶¶ 6-7.)  Additionally, English explains that prior to the trade show at issue, as President and CEO of Raydan, he issued a written policy to all Raydan employees "prohibiting conversations with actual/potential customers and competitors regarding Raydan's patents or the inferiority of a competitor's product." (Id. ¶ 11.)  According to Nissen's declaration, he has read and abided by that written policy.  (Nissen Decl. ¶ 18.)

Although the parties dispute what took place at the Boler booth on March 16, 2005, it is undisputed that after the incident,

no one from Boler contacted Raydan's management to express any concern about the '718 patent, to discuss any potential conflict between the parties, or to express any concern about potential infringement. (English 5.17.05 Decl. ¶ 10.) Instead, Boler proceeded to file its complaint for declaratory judgment less than one week later.

During the course of briefing the motion to dismiss, an issue arose regarding whether Boler has standing to seek a declaratory judgment. Although Boler has represented that it makes, uses and sells the AR2 suspension products, (e.g., Wagner Aff. ¶ 2), the evidence before the court indicates that Boler is merely the parent company, and that a division of Hendrickson USA — Hendrickson Truck Suspension Systems ("Hendrickson Truck") — actually makes, uses and sells the AR2 suspension systems.[3] (E.g., Kiefer Aff. ¶¶ 5-7, Boler's Opp. Br. at Ex. 2.) In its surreply brief, Boler contends that it remains a proper party with standing to bring this lawsuit, but argues that in the event the court disagrees, the court should allow Hendrickson USA or Hendrickson Truck to join the lawsuit as an additional party plaintiff. Without waiting for the court's ruling and without obtaining leave of court to do so, Boler later

---

[3] The court's independent research shows that Boler is a privately-owned holding company whose major business — Hendrickson International Corporation and Hendrickson USA — is a worldwide supplier of suspension systems for the trucks and trailers. Hendrickson Int'l Corp. 4.18.02 press release, available at http://www.hendrickson-intl.com/news/pr/0402_boler_new_member.asp.

filed its First Amended Complaint, adding Hendrickson USA as a plaintiff.

With these background facts in mind, we turn to the merits of the defendants' motions to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

## DISCUSSION

### A.  Legal Standards under the Declaratory Judgment Act & Rule 12(b)(1)

The Declaratory Judgment Act, 28 U.S.C. § 2201, enables a party "who is reasonably at legal risk because of an unresolved dispute[] to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." BP Chem. Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993).  When a plaintiff seeks a declaration of its legal rights under the Act, there must be an actual controversy between the parties before the court may exercise jurisdiction over the matter.  EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed. Cir. 1996).  In other words, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  Id. (quoting Maryland Casualty Co. v. Pac. Coal & Oil, Co., 312 U.S. 270, 273 (1941)).  In the patent context, under the Federal Circuit's two-pronged test, an actual

controversy exists where (1) the defendant's conduct has created an objectively reasonable apprehension that the defendant will initiate litigation if the plaintiff continues the allegedly infringing activity, and (2) the plaintiff has actually produced or is prepared to produce an allegedly infringing product.[4]  Id. at 811; West Interactive Corp. v. First Data Resources, Inc., 972 F.2d 1295, 1297 (Fed. Cir. 1992).

Whether an actual controversy exists is a question of law, BP Chem., 4 F.3d at 978, and the plaintiff bears the burden of establishing its existence by a preponderance of the evidence, West Interactive, 972 F.2d at 1297; Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed. Cir. 1992).  If there is no actual controversy, the court has no authority to decide the case.  EMC, 89 F.3d at 810.  If, on the other hand, there is an actual controversy and thus jurisdiction, the court may, but is not required to, exercise jurisdiction.  Id.

Here, in moving to dismiss under Rule 12(b)(1) on the ground that there is no actual controversy between the parties, defendants deny the truth of plaintiffs' jurisdictional allegations, rather than the sufficiency of them.  In other words, defendants are challenging the factual basis for the

---

[4]  Although the Federal Circuit's general two-pronged test occasionally may need to be modified to address the particular facts presented, Infinitech, Inc. v. Vitrophage, Inc., 842 F. Supp. 332, 335 (N.D. Ill. 1994 (J. Grady) (citing Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988)), no modification is necessary in this case.

court's subject matter jurisdiction.  <u>Cedars-Sinai Med. Center v. Watkins</u>, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  Accordingly, in this case, "the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion."  <u>Id.</u> (internal citations omitted). In determining whether subject matter jurisdiction exists, the "court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."  <u>Id.</u> at 1584.  Moreover, the court "'may weigh the evidence in order to satisfy itself that jurisdiction exists; as such, disputes over material facts will not preclude the court from deciding jurisdictional issues.'" <u>Newsome v. United States</u>, No. 01 C 5409, 2002 WL 1559670, at *1 (N.D. Ill. July 16, 2002) (citation omitted).

## B.  Analysis

Defendants contend that (1) there is no actual controversy because neither plaintiff had a reasonable expectation that it would be sued for patent infringement when this litigation commenced; (2) Boler lacks standing to bring this claim because Hendrickson USA, not Boler, produces the allegedly infringing AR2 suspension products; and (3) the court should decline to exercise jurisdiction even if we find that an actual controversy exists because plaintiffs rushed to litigation without making any attempt to contact defendants in an effort to resolve this issue

out of court.  Because defendants' first argument is dispositive,
there is no need to address the others.  As explained further
below, regardless of which plaintiff produces the AR2 suspension
products, the court agrees that plaintiffs' apprehension of being
sued was not objectively reasonable.  We therefore grant
defendants' motions to dismiss, concluding that there is no
actual controversy, and thus no subject matter jurisdiction to
adjudicate plaintiffs' claims for declaratory relief.

Plaintiffs bear the burden of proving by a preponderance of
the evidence that they had an objectively reasonable apprehension
of being sued when they commenced this declaratory judgment
action.  <u>Shell Oil</u>, 970 F.2d at 887.  "The element of threat or
reasonable apprehension of suit turns on the conduct of the
patentee . . . ."  <u>BP Chem.</u>, 4 F.3d at 978.  In assessing whether
plaintiffs have met their burden, we examine the totality of the
circumstances to determine whether the patentee's conduct rises
to a sufficient level to indicate an intent to initiate an
infringement action.  <u>E.g.</u>, <u>EMC</u>, 89 F.3d at 811.  An express
charge of infringement or threat of suit, while sufficient to
create a reasonable apprehension, is not required.  <u>Id.</u>

Regarding Raydan, plaintiffs argue that they had an
objectively reasonable apprehension that Raydan would sue them
for infringing the '718 patent based on the incident at the trade

show in March 2005.[5]  Defendants counter that even if Nissen made

a charge of infringement at the trade show (which they deny), he

lacked authority to do so, and a charge of infringement by an

agent who lacks authority to make such a charge is insufficient

to create an actual controversy.  Defendants are correct.

Courts consistently have held that unless an agent has

actual or apparent authority to assert claims of patent

infringement or to initiate suit on the patentee's behalf, the

agent's statements are insufficient to create an actual

controversy.  Dr. Beck and Co. G.M.B.H. v. Gen. Elec. Co., 317

F.2d 538, 539 (2d Cir. 1963) (no actual controversy where agent

lacked actual or apparent authority to make patent infringement

charge on behalf of the patentee); Photogen, Inc. v. Wolf, No. 00

C 5841, 2001 WL 477226, at *1 (N.D. Ill. May 7, 2001) (finding no

_____

[5]/    Technically, there are no arguments before the court on behalf of
Hendrickson USA.  However, because Boler added Hendrickson USA as a plaintiff
after the parties completed briefing on the motion to dismiss, the court will
address Boler's arguments opposing dismissal as if those arguments were raised
on behalf of both plaintiffs.  Additionally, for ease of discussion, the court
will discuss Boler and Hendrickson USA collectively as plaintiffs, without regard
to the fact that they are separate corporate entities.    Under other
circumstances, it could be inappropriate to discuss the parent and its indirect
subsidiary collectively as one entity.   For example, just as a having a
parent/subsidiary relationship is not sufficient, without more, to warrant a suit
against the parent for patent infringement by its subsidiary, see Aspex Eyewear,
Inc. v. Altair Eyewear, Inc., 361 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2005); see
also Tegal Corp. v. Tokyo Electron. Co., Ltd., 248 F.3d 1376, 1379 (Fed. Cir.
2001), being a parent corporation is not sufficient to give a party the right to
seek a declaratory judgment regarding the legality of its subsidiary's conduct.
So if one or both of the plaintiffs in this case had a reasonable expectation of
being sued, we would have to address whether both the parent and the its
subsidiary are proper parties in light of the second prong of the Federal
Circuit's test.  In this case, however, because neither Boler nor Hendrickson USA
had an objectively reasonable expectation of being sued, the corporate
distinction between the parent and subsidiary ultimately is not relevant to the
court's analysis.

actual controversy because agent lacked authority to initiate
patent infringement suit on patentee's behalf); <u>Bausch & Lomb
Inc. v. CIBA Corp.</u>, 39 F. Supp. 2d 271, 274 (W.D.N.Y. 1999) (no
actual controversy where there was no evidence that co-inventor
of patent had actual or apparent authority to assert infringement
charge on patentee's behalf); <u>Sherman Treaters, Ltd. v.
Ahlbrandt</u>, 607 F. Supp. 939, 943 (D.D.C. 1985) ("patentee should
not be subjected to a declaratory judgment action for charges of
infringement which he did not level himself or allow another to
level").  In the instant case, although there is a factual
dispute regarding whether Nissen told Wagner that the AR2
suspension product infringed the '718 patent or taunted that
Raydan would own Wagner's company, it is undisputed that the only
possible assertion of patent infringement came from Nissen, a
marketing manager at Raydan, and that English, Raydan's President
and CEO, did not hear Nissen's alleged comments.  Even if Nissen
made the alleged comments — a dispute the court need not resolve
— the evidence also shows that Nissen lacks both actual and
apparent authority to assert patent infringement claims on
Raydan's behalf.  The declarations submitted by English and
Nissen establish that as a marketing manager, Nissen bears no
responsibility for evaluating whether a competitor's product
infringes Raydan's patents, nor does he have any authority to

make claims of patent infringement or to initiate suit on
Raydan's behalf.

Faced with this uncontroverted evidence, plaintiffs do not
suggest that Nissen had actual authority. However, regarding
apparent authority, plaintiffs argue that the question is not
whether Nissen had apparent authority under agency law to speak
on Raydan's behalf. Rather, plaintiffs urge, the issue is
whether it was reasonable for plaintiffs to assume that Nissen
was speaking on Raydan's behalf. The court disagrees.

Despite plaintiffs' argument to the contrary, the critical
question is whether Nissen had apparent authority. See Dr. Beck
& Co. G.M.B.H., 210 F. Supp. 86, 90 (S.D.N.Y. 1962), aff'd, 317
F.2d 538, 539 (2d Cir. 1963) (if there is no question regarding
actual authority, court must examine facts to determine whether
there was apparent authority). Under the law of agency, "[t]he
appearance of authority must be created by the principal[,]" not
the agent. Id. The issue, therefore, is whether *Raydan* did
anything to lead plaintiffs reasonably to believe that Nissen had
authority to make infringement charges regarding the '718 patent.
Id.; Sherman Treaters, 607 F. Supp. at 944 (whether apparent
authority exists depends on principal's conduct). Here,
plaintiffs offer no evidence that Raydan engaged in any conduct
from which a reasonable person could conclude that a sales
manager like Nissen had authority to raise patent infringement

claims on his employer's behalf.  To the extent plaintiffs

concluded that Nissen had such authority, that conclusion was not

objectively reasonable.[6]  See, e.g., Beck, 210 F. Supp. at 90

(patentee is liable only if it authorized agent's representations

or engaged in conduct that would allow reasonable person to infer

that agent had authority).  Because their apprehension of suit

was not reasonable, plaintiffs fail the first prong of the

Federal Circuit's test, and thus fail to demonstrate that there

is an actual controversy between plaintiffs and Raydan.[7]

---

[6]/ Relying on Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc., 655 F.2d 938, 945 (9th Cir. 1981), plaintiffs contend that the court should focus on plaintiffs, not on the patentee, to determine whether their apprehension of suit was reasonable.  But according to controlling Federal Circuit law, the "element of threat or reasonable apprehension of suit turns on the conduct of the patentee[.]" BP Chem., 4 F.3d at 978.  Further, we decline to follow Societe de Conditionnement to the extent the ruling is inconsistent with the numerous decisions that have held that an agent must have actual or apparent authority to assert infringement charges in order to create an actual controversy.  See, e.g., Beck, 317 F.2d at 539; Photogen, 2001 WL 477226 at *1; Bausch & Lomb, 39 F. Supp. at 274; Sherman Treaters, 607 F. Supp. at 943.

[7]/     Plaintiffs contend that the English and Nissen declarations demonstrate that an actual controversy exists because in those declarations, defendants do not explicitly rule out future litigation against plaintiffs.  But plaintiffs' argument is misplaced.  Neither of the cases cited by plaintiffs suggest that an actual controversy exists merely because defendants have not explicitly ruled out the possibility of future litigation against plaintiffs.  In Technical Concepts, L.P. v. Zurn Industries, Inc., No. 02 C 2827, 2002 WL 31027962, at *4-5 (N.D. Ill. Sept. 10, 2002), the court explained that although only the actions of the defendant known to plaintiff at the time the lawsuit is commenced can be considered in determining whether an actual controversy exists, subsequent events — such as the defendant's choice not to explicitly rule out litigation — can reinforce the correctness of the court's conclusion that an actual controversy exists.  Likewise, in C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 881 (Fed. Cir. 1983), the court ruled that where the plaintiff had a reasonable apprehension of being sued, defendant's carefully worded affidavit was insufficient to offset that apprehension, particularly because the affidavit did not rule out the possibility of a subsequent infringement action.  Here, in contrast, plaintiffs commenced litigation without a reasonable apprehension of being sued, so the fact that defendants did not subsequently rule out the possibility of future litigation is irrelevant.
     Plaintiffs also challenge the English and Nissen declarations on other grounds that warrant little discussion.  For example, plaintiffs argue that although English declares that he did not hear Nissen make any comments about

Nor does an actual controversy exist between ArvinMeritor and plaintiffs. ArvinMeritor was not involved in the incident at the trade show, and plaintiffs do not allege that ArvinMeritor made any threats of litigation or claims of patent infringement to plaintiffs. Indeed, there are no allegations regarding any communications between plaintiffs and ArvinMeritor relating to the '718 patent. Instead, plaintiffs contend that they had a reasonable apprehension that ArvinMeritor would sue them for patent infringement because ArvinMeritor (apparently) is an exclusive licensee with a right to enforce the '718 patent. Relying on <u>Prima Tek II, L.L.C. v. A-Roo, Co.</u>, 222 F.3d 1372, 1381 (Fed. Cir. 2000), plaintiffs argue that ArvinMeritor's status as an exclusive licensee makes it a necessary party plaintiff to any infringement action that Raydan may bring, which in turn makes ArvinMeritor a necessary defendant in plaintiffs' declaratory judgment suit. In other words, if plaintiffs reasonably anticipated being sued by Raydan, then they also reasonably anticipated being sued by Raydan's exclusive licensee, ArvinMeritor. This argument fails for at least two reasons,

---

patent infringement at the Boler booth, English does not rule out the possibility that he personally may have made such accusations. But plaintiffs have never claimed that English made any patent infringement assertions; English had no reason to refute an allegation that was never made. Similarly, although Nissen denies making the comments plaintiffs have attributed to him (<u>e.g.</u>, "That's where you're violating our patent"), plaintiffs argue that he did not deny making other, similar remarks. Plaintiffs do not allege that Nissen made other similar remarks, however. Nissen need not refute allegations that have not been made, particularly in light of the fact that plaintiffs bear the burden of establishing the existence of an actual controversy.

however.  First, even if plaintiffs' necessary-party argument
were accurate, in light of the court's conclusion that there is
no actual controversy between Raydan and plaintiffs, it follows
that no actual controversy exists between plaintiffs and
ArvinMeritor either.  Second, plaintiffs' necessary-party
argument is inherently flawed because it is based on a
misunderstanding of the Prima Tek decision.

     In Prima Tek, the issue presented was whether plaintiffs who
held exclusive licenses to certain patents could bring a patent
infringement action against a competitor without joining the
owner of the patents as a plaintiff.  222 F.3d at 1376.  The
Federal Circuit explained the general rule that "a patentee
should be joined, either voluntarily or involuntarily, in any
infringement suit brought by an exclusive licensee."  Id. at
1377.  Although there is an exception to that general rule,[8] the
court held that the exception did not apply under the facts
presented, and thus the licensee-plaintiffs lacked standing to
bring the patent infringement action without joining the patent
owner.  Id. at 1380-81.  Prima Tek thus teaches that in patent
litigation between an exclusive licensee and a competitor, the
patent owner typically will be a necessary party to the lawsuit.
It does not follow, however, that when there is a patent

_____

     [8]  The exception applies in cases in which the patentee assigns all
substantial rights under the patent to the exclusive licensee, thus making the
assignee an effective "patentee" with standing to maintain an infringement suit
in its own name.  Prima Tek, 222 F.3d at 1377.

infringement lawsuit between a *patent owner* and a competitor, an *exclusive licensee* is a necessary party to the litigation.  <u>Prima Tek</u> simply did not address that issue.  Plaintiffs have not met their burden of establishing that they have an actual controversy with ArvinMeritor.

<b><u>CONCLUSION</u></b>

For the reasons explained above, the court finds that plaintiffs did not have an objectively reasonable apprehension of being sued by defendants when they commenced this declaratory judgment action, so no actual controversy exists between plaintiffs and defendants.  Accordingly, the court grants Raydan's and ArvinMeritor's respective motions to dismiss plaintiffs' declaratory judgment claims against them for lack of subject matter jurisdiction.


DATED:       February 13, 2006



ENTER:  _____

John F. Grady, United States District Judge